IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRANSITIONAL HOSPITALS CORPORATION OF NEVADA, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:15-CV-01781-N |
| HEALTHSMART BENEFIT SOLUTIONS, INC., *et al.*, | § § § | |
| Defendants. | § § | |

## ORDER

This Order addresses Defendants Tropicana Las Vegas, Inc. ("Tropicana") and Tropicana Las Vegas, Inc. Employee Benefit Plan's ("Plan") (collectively, "Tropicana Defendants") motion to dismiss [19]. Because the Employee Retirement Income Security Act of 1974 ("ERISA") does not preempt Plaintiff's constructive fraud claim, the Court denies the motion.

### I. ORIGINS OF THE CONSTRUCTIVE FRAUD CLAIM AND THE TROPICANA DEFENDANTS' MOTION TO DISMISS

Plaintiff Transitional Hospitals Corporation of Nevada, Inc. d/b/a Kindred Hospital Las Vegas at St. Rose Dominican Hospitals and d/b/a Kindred Hospital Las Vegas-Flamingo ("Kindred Hospital") brings this action against Defendant HealthSmart Benefit Solutions, Inc. ("HealthSmart") and the Tropicana Defendants. Kindred Hospital's claims against HealthSmart and the Tropicana Defendants originate in its provision of medical services to

ORDER – PAGE 1

a former Tropicana employee (the "Insured") for injuries sustained during a motor vehicle accident.  In its Amended Petition, Kindred Hospital says the Insured was enrolled in the Plan, an employee welfare benefit plan organized and existing under the provisions of ERISA, 29 U.S.C. § 1001, *et seq*.  Kindred Hospital alleges that Tropicana is the sponsor and administrator of the Plan, and that HealthSmart is a third-party claims administrator for the Plan.

Kindred Hospital relates the following chain of events in its Amended Petition [1-2]. On January 3, 2014, Kindred Hospital contacted HealthSmart on three separate occasions to verify the Insured's coverage under the Plan.  At one point, Kindred Hospital specifically inquired about the Insured's eligibility for coverage if subsequent investigations revealed that the Insured had been driving while intoxicated at the time of his accident.  On each occasion, HealthSmart confirmed the Insured's eligibility for coverage and the Plan's payment terms. Based on these representations, Kindred Hospital admitted the Insured.  HealthSmart subsequently authorized the continued care and treatment of the Insured.

In February, 2014, HealthSmart started denying Kindred Hospital's claims on an intermittent basis.  On May 23, 2014, counsel for Kindred Hospital contacted HealthSmart in an attempt to resolve the dispute.  Kindred Hospital's counsel asked HealthSmart to ensure that all future communications between the two entities occur through counsel.  On August 4, 2014, HealthSmart informed Kindred Hospital that, because "the member's blood alcohol level was over the legal limit," the Plan had "instructed HealthSmart to deny the claims as not covered under the terms and conditions of the member's health plan."  Pls.' First Am.

Pet., ¶ 75 [1-2].  Because Kindred Hospital could not safely discharge the Insured, Kindred Hospital continued to provide him with care and treatment until he died on August 31, 2014. About a month later, Kindred Hospital filed an original petition in state court alleging various misrepresentation-based claims against HealthSmart.

During the course of discovery, in March, 2015, Kindred Hospital learned for the first time that Tropicana purportedly terminated the Insured's employment on June 23, 2014. Kindred Hospital also learned that HealthSmart, as required by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), had sent a notice and election form for continuation health coverage to the Insured after his termination.  HealthSmart sent the COBRA notice and election form to the Insured's home address, even though the Insured was still unconscious and hospitalized at Kindred Hospital.  The Insured did not elect continuation coverage prior to his death.  On March 27, 2015, the Tropicana Defendants informed Kindred Hospital that the Insured's failure to elect continuation coverage constituted an additional basis for the Plan's denial of Kindred Hospital's claims.

Kindred Hospital subsequently amended its petition to include a claim for constructive fraud and a request for declaratory relief against the Tropicana Defendants.  In its request for declaratory relief, Kindred Hospital asks the Court for several rulings regarding the legality of the Insured's termination of employment, the validity of the COBRA notice and election form, and the duration of the COBRA election period.  With respect to duration, Kindred Hospital argues that the Insured's death tolled the COBRA election period, and that the Insured's estate may elect continuation coverage on his behalf.  However, if the COBRA

ORDER – PAGE 3

election period has indeed expired, then Kindred Hospital claims that the Tropicana Defendants' failure to inform it of these material facts constituted constructive fraud.

With respect to the constructive fraud claim, Kindred Hospital asserts that, had it known of the Insured's termination of employment, the delivery of the COBRA notice and election form, and the commencement of the COBRA election period, it would have taken steps to ensure continuation of coverage for the Insured. Kindred Hospital alleges that HealthSmart and the Tropicana Defendants chose not to disclose these events because they wanted "to concoct another basis for non-payment given the weakness of their other contentions . . . ." Pls.' First Am. Pet., ¶ 79 [1-2]. Kindred Hospital further alleges that HealthSmart and the Tropicana Defendants concealed this information "with the intent that Kindred Hospital would be precluded from taking any steps to protect its interests." *Id.*

The Tropicana Defendants removed this action to federal court on May 21, 2015. They now move to dismiss Kindred Hospital's claim for constructive fraud.

## II. RULE 12(b)(6) STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts

well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. THE COURT DENIES THE MOTION TO DISMISS

The Tropicana Defendants move to dismiss Kindred Hospital's claim for constructive fraud. The Tropicana Defendants argue that they had no duty under state law to inform Kindred Hospital of material facts regarding the Insured's coverage. Alternatively, they argue that ERISA preempts such a claim. The Court rejects these contentions and denies the motion.

### A. The Tropicana Defendants Had a Duty to Inform Under State Law

As a preliminary matter, the Court must determine whether Kindred Hospital has pled sufficient facts to support a claim for constructive fraud. Under Texas law, "constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). Here, the issue is whether the Tropicana Defendants had a duty to inform Kindred Hospital of the Insured's

termination of employment, the delivery of the COBRA notice and election form, and the commencement of the COBRA election period.

The Tropicana Defendants argue that they had no duty under Texas law to inform Kindred Hospital of these facts. They contend that Texas law does not require a third party to disclose material facts when that party neither engages in direct communication with the plaintiff nor enters into a contractual relationship with the plaintiff. Here, Kindred Hospital has not alleged either condition.

Still, the Tropicana Defendants' characterization of their relationship with Kindred Hospital overlooks several important circumstances. First, Kindred Hospital has alleged that its counsel was in direct communication with HealthSmart's counsel, an agent of the Tropicana Defendants, at the time of the Insured's termination of employment. Moreover, upon admission to Kindred Hospital, the Insured presumably assigned his benefits under the Plan to Kindred Hospital. Most importantly, "[w]hen special confidence is placed in one who thereby obtains a resulting superiority of position and influence, a fiduciary or confidential relationship may result." *Sanus/New York Life Health Plan, Inc. v. Dube-Seybold-Sutherland Mgmt., Inc.*, 837 S.W.2d 191, 199 (Tex. App. – Houston [1st Dist.] 1992, writ dism'd by agr.). In *Sanus*, the court held that a special relationship of trust and confidence existed between a medical provider and a health insurance company because the medical provider depended on the health insurance company for crucial information regarding its patients' health insurance coverage. *See id.* at 199. The situation of the present parties suggests that Kindred Hospital similarly depended on the Tropicana Defendants for

material information regarding the Insured's coverage.  Absent such information, Kindred Hospital could not accurately ascertain the financial risk involved in treating the Insured.

Kindred Hospital has pled sufficient facts to show that the Tropicana Defendants had a duty to inform Kindred Hospital of material facts concerning the Insured's coverage, either through direct communication with Kindred Hospital or through HealthSmart.  Because HealthSmart allegedly made several representations to Kindred Hospital regarding the Insured's coverage and the Plan's denial of Kindred Hospital's claims, the omission of material facts regarding these issues would have been a de facto misrepresentation.  *See Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230, 236 & n.6 (Tex. App. – San Antonio 1975, writ ref'd n.r.e.) (finding defendant had duty to disclose new information that made defendant's earlier representation misleading or untrue).  Thus, a violation of this duty to inform is fraudulent.  Kindred Hospital alleges that the Tropicana Defendants breached this duty when they failed to disclose information regarding the Insured's termination of employment, the delivery of a COBRA notice and election form, and the commencement of the election period.  Accordingly, the Court holds that Kindred Hospital has alleged sufficient facts to support a claim for constructive fraud.

### B. The Scope of ERISA Preemption

The Tropicana Defendants next argue that ERISA preempts Kindred Hospital's constructive fraud claim.[1]  With some exceptions, ERISA "supersede[s] any and all State

---

[1]The Court evaluates Kindred Hospital's claim under the doctrine of conflict preemption.  Complete preemption is not at issue because the Court has federal question jurisdiction.  *See McNeil v. Time Ins. Co.*, 205 F.3d 179, 191 n.22 (5th Cir. 2000).

ORDER – PAGE 7

laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).  The Supreme Court has held that "a state law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'"  *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). The Supreme Court has "acknowledge[d] that 'connection with' is scarcely more restrictive than 'relate to,'" and consequently "caution[s] against an uncritical literalism that would make pre-emption turn on infinite connections."  *Id.* (internal quotation marks and citation omitted).

Instead, courts should take "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans."  *Id*.  According to Congress, the purpose of ERISA is to

> protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).  Thus, in enacting ERISA, Congress intended "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits."  *Egelhoff*, 532 U.S. at 148.

The Fifth Circuit has articulated a two-prong test for determining whether ERISA preempts a state law claim.  "A defendant pleading preemption must prove that: (1) the claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA

entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Bank of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (internal citation and quotation marks omitted). The defendant bears the burden of proof on both elements. *Id.*

### C. ERISA Does Not Preempt Kindred Hospital's Constructive Fraud Claim

The crux of Kindred Hospital's claim is not that the Tropicana Defendants improperly denied plan benefits. Rather, Kindred Hospital claims that the Tropicana Defendants are liable for any losses it sustained as a result of the Tropicana Defendants' failure to disclose material facts regarding the Insured's coverage. This claim is similar to the cause of action considered in *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990), where a hospital sued an insurance carrier for false representation of coverage. In that case, the Fifth Circuit explained, "[t]he only question is whether the risk of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan." *Id.* at 246. The court held that "[e]nforcing the allocation of risks between commercial entities that conduct business in a state is a classically important state interest." *Id.* Although *Memorial Hospitals* involved a claim for misrepresentation and not constructive fraud, the Court concludes that this dispute implicates the same state interest.

The Tropicana Defendants contend that Kindred Hospital's constructive fraud claim nonetheless addresses an area of exclusive federal concern. In particular, the material facts that Kindred Hospital has accused the Tropicana Defendants of omitting include the

ORDER – PAGE 9

termination of the Insured's employment, the provision of a COBRA notice and election form, and the commencement of the continuation coverage election period. The Tropicana Defendants argue that because COBRA prescribes the procedure that a plan must follow in the event of a beneficiary's termination of employment, the imposition of a duty under state law to inform Kindred Hospital of these facts would overlap with COBRA's notice provisions. And, as the Fifth Circuit has repeatedly held, ERISA preempts state law claims that would impose obligations that parallel or contradict obligations imposed by ERISA itself. *See, e.g.*, *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 (5th Cir. 1992) ("Superimposing state law fraud standards on the elaborate ERISA provisions governing the content and timing of notice of plan provisions and amendments would undercut the goal of uniform regulation in the manner that section 514(a) seeks to prevent." (internal citation omitted)); *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 758 (5th Cir. 1990) (holding ERISA preempts a cause of action that "would impose a state-created duty . . . ERISA specifically does not impose").

The imposition of a duty to inform in these circumstances will not contradict, parallel, or otherwise overlap with any of the requirements of ERISA. COBRA sets forth several procedures that ERISA plans must follow upon termination of a beneficiary's employment. In particular, COBRA requires that a plan administrator give the beneficiary notice and an opportunity to elect continuation coverage. *See* 29 U.S.C. §§ 1161(a), 1163(2). However, neither COBRA nor ERISA contains any provision that would require a plan administrator to notify third-party providers in the event of a beneficiary's termination of employment. In

fact, ERISA "imposes no fiduciary responsibilities in favor of third-party health care providers regarding the accurate disclosure of information, or, indeed, regarding any other matter." *Memorial*, 904 F.2d at 247. Thus, an insurer or employer's obligation to inform a third-party provider of material facts regarding a beneficiary's health care coverage does not implicate an area of exclusive federal interest.

Alternatively, the Tropicana Defendants argue that Kindred Hospital's constructive fraud claim is merely derivative of the Insured's right to recover benefits under the Plan. But Kindred Hospital does not premise this claim on the allegation that the Tropicana Defendants somehow violated a state law duty to provide the Insured with notice and an opportunity to elect continuation coverage. ERISA undoubtedly preempts such claims. *See, e.g.*, *Sherman v. Lexington Concrete & Block Co.*, 908 F. Supp. 2d 809, 811 (S.D. Miss. 2012) (holding ERISA preempts a beneficiary's claim for intentional misrepresentation premised on his former employer's failure to provide COBRA notices and benefits). Instead, Kindred Hospital claims, in its independent capacity as a third-party health care provider, that the Tropicana Defendants breached their duty to keep Kindred Hospital informed of all material facts concerning the Insured's coverage. The Tropicana Defendants did not owe the same duty to the Insured. Thus, the Court concludes that Kindred Hospital's claim is neither dependent on nor derived from any right of the Insured. *See Access Mediquip L.L. C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383 (5th Cir. 2011) (stating the "dispositive issue" on appeal was "whether [the provider's] state law claims are dependent on, and derived from the rights of [the beneficiaries] to recover benefits under the terms of their ERISA plans").

The Tropicana Defendants finally contend that resolution of the constructive fraud claim will require consideration of ERISA and the terms of the Plan.  In particular, the Tropicana Defendants assert that a determination of Kindred Hospital's damages under this claim will require the Court to address the issue of whether the Insured's death tolled the COBRA election period.  Kindred Hospital alleges in its Amended Petition that if the election period was not tolled, then it "has been damaged by this failure to disclose relevant facts to its counsel . . . ."  Pls.' First Am. Pet., ¶ 78 [1-2].  The Tropicana Defendants read this statement as an admission that Kindred Hospital sustained no damages if the election period was in fact tolled.

The need to consult ERISA in order to determine the duration of the coverage election period does not mean that Kindred Hospital's constructive fraud claim addresses an area of exclusive federal concern.  Whether the Insured's estate may still elect continuation coverage is only relevant to the issue of Kindred Hospital's damages.  This incidental relation is insufficient to require preemption.  *See Access Mediquip*, 662 F.3d at 386 (noting that the need to consult the terms of an ERISA plan in order to calculate the amount of damages would not require preemption); *Memorial*, 904 F.2d at 247 (holding that the need to measure damages, in part, according to terms of an ERISA plan was an "incidental relation" that did not require preemption).

Moreover, Kindred Hospital's constructive fraud claim is similar to the misrepresentation claim asserted in *Transitional Hosp. Corp. v. Blue Cross and Blue Shield of Texas, Inc.*, 164 F.3d 952 (5th Cir. 1999).  In *Transitional Hospitals*, the hospital alleged

ORDER – PAGE 12

that, "to the extent that [the beneficiary] [wa]s not covered by the Policy as represented by [the insurer]," the defendants' misrepresentations were actionable under state law. *Id.* at 955 (internal quotation marks omitted). Thus, as Kindred Hospital has alleged in this case, the hospital in *Transitional Hospitals* acknowledged that its claims were contingent on the nonexistence of coverage to a certain extent. Nevertheless, the Fifth Circuit ultimately found that ERISA did not preempt these claims because they were not "dependent on or derived from" the beneficiary's right to recover benefits under the plan. *Id.* Here, the Court has already determined that this claim is not derivative of any right belonging to the Insured. Accordingly, the Court concludes that Kindred Hospital's claim for constructive fraud does not address an area of exclusive federal concern.

Even if the constructive fraud claim did address an area of exclusive federal concern, the Tropicana Defendants have nonetheless failed to show that it "directly affects the relationship among traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Bank of Louisiana*, 468 F.3d at 242 (internal citation and quotation marks omitted). Third-party health care providers are not traditional ERISA entities. *See id.* Moreover, resolution of the constructive fraud claim will not directly affect the relationships among the traditional ERISA entities. The Tropicana Defendants suggest that the imposition of a duty to inform a third-party provider of changes in a beneficiary's health care coverage would create "tensions" among the traditional ERISA entities. *See* Defs.' Reply Br. in Supp., at 8 [27]. At bottom, though, any resolution of this claim would simply result in a one-time payment to Kindred Hospital and would not alter the Tropicana

Defendants' on-going obligations under the Plan. *See Access Mediquip*, 662 F.3d at 385 (holding "a one-time recovery . . . will not affect the on-going administration or obligations of the ERISA plan . . . because the recovery in no way expands the rights of the patient to receive benefits" (internal quotation marks and citation omitted)).

The Tropicana Defendants have not shown that Kindred Hospital's constructive fraud claim addresses an area of exclusive federal concern, nor have they demonstrated that resolution of this claim will directly affect the relationship among traditional ERISA entities. For these reasons, the Court holds that ERISA does not preempt Kindred Hospital's claim for constructive fraud against the Tropicana Defendants.

## CONCLUSION

The Court denies the Tropicana Defendants' motion to dismiss Kindred Hospital's claim for constructive fraud.


Signed November 4, 2015.


David C. Godbey
United States District Judge


ORDER – PAGE 14